UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YAZMIN IVETTE TORRES,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

<u>DECISION & ORDER</u>

14-CV-6438P

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Yazmin Ivette Torres ("Torres") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 15).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## PROCEDURAL BACKGROUND

Torres protectively filed for SSI and DIB on April 5, 2011, alleging disability beginning on November 14, 2005, due to back pain and a crooked spine. (Tr. 202, 206).[1] On August 4, 2011, the Social Security Administration denied Torres's claims for benefits, finding that she was not disabled. (Tr. 29-30). Torres requested and was granted a hearing before Administrative Law Judge David S. Pang (the "ALJ"). (Tr. 9, 62, 63-65, 121-26). The ALJ conducted a hearing on November 13, 2012. (Tr. 9-28). Torres was provided an interpreter for the hearing and was represented at the hearing by her attorney. (Tr. 11-12). In a decision dated January 11, 2013, the ALJ found that Torres was not disabled and was not entitled to benefits. (Tr. 38-49).

On June 9, 2014, the Appeals Council denied Torres's request for review of the ALJ's decision. (Tr. 1-6). Torres commenced this action on July 31, 2014, seeking review of the Commissioner's decision. (Docket # 1).

## DISCUSSION

I. **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo*

---

[1] The administrative transcript shall be referred to as "Tr. __."

whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

A. **The ALJ's Decision**

  In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 38-49). Under step one of the process, the ALJ found that Torres had not engaged in substantial gainful activity since November 14, 2005, the alleged onset date. (Tr. 40). At step two, the ALJ concluded that Torres had the severe impairments of back disorder, fibromyalgia, mild osteopenia of the left wrist, migraines, mild right shoulder tendonopathy,

bipolar disorder, panic disorder with agoraphobia, anxiety disorder, depression, and cognitive disorder not otherwise specified. (*Id.*). At step three, the ALJ determined that Torres did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 41-42). With respect to Torres's mental impairments, the ALJ found that Torres suffered from mild restrictions in activities of daily living, and moderate restrictions in social functioning and in her ability to maintain concentration, persistence, or pace. (*Id.*). The ALJ concluded that Torres had the Residual Functional Capacity ("RFC") to perform sedentary work, except that she could only occasionally reach overhead bilaterally and was limited to frequent handling and fingering bilaterally. (Tr. 42-47). He also determined that she could never work around unprotected heights, climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (*Id.*). Further she was limited to simple, routine, and repetitive tasks, could tolerate only occasional interaction with supervisors, coworkers, and the public, and could understand and follow simple instructions in English, but could not understand and follow complex written or oral directions in English. (*Id.*). At step four, the ALJ determined that Torres was unable to perform her prior work, including two prior unskilled positions and one prior skilled position. (Tr. 47). At step five, the ALJ determined that Torres was a younger individual between the ages of 18-44 on her application date, but had become a younger individual between the ages of 45-49 during the pendency of her application for benefits. (*Id.*). He also determined that she had a marginal education and was able to communicate in English. (*Id.*). The ALJ determined that the issue of the transferability of Torres's job skills was not material because application of the Medical-Vocational Rules (the "Grids") supported a finding of "not disabled" irrespective of the transferability of her job skills. (Tr. 48). Finally, considering Torres's age, education, work experience, and RFC, the ALJ

determined that other jobs existed in the national and regional economy that Torres could perform, including the positions of sorter, assembler, and inspector. (*Id.*). Accordingly, the ALJ found that Torres was not disabled. (Tr. 48-49).

### B.     Torres's Contentions

Torres contends that the ALJ's determination is not supported by substantial evidence and is the product of legal error. (Docket # 9-1). First, she challenges the ALJ's step five assessment of her literacy and ability to communicate in English. (*Id.* at 17-21). According to Torres, because she is both illiterate and unable to communicate in English, the ALJ should have found her disabled under Grid Rule 201.17. (*Id.*). This error, Torres maintains, requires a reversal of the Commissioner's decision and a remand for calculation of benefits. (*Id.*). Alternatively, Torres maintains that the ALJ's step five assessment is not supported by substantial evidence because the hypothetical posed to the vocational expert did not account for Torres's illiteracy and her inability to communicate in English. (*Id.* at 22-25). Although styled as a challenge to the ALJ's step five determination, Torres also challenges the ALJ's physical RFC assessment insofar as it finds her capable of performing frequent, as opposed to occasional, handling, fingering, and feeling. (*Id.* at 24-25). Additionally, Torres maintains that the ALJ failed to account for her GAF scores in his mental RFC assessment and improperly discounted the opinion of the state consulting examiner. (*Id.* at 25-26). Finally, Torres maintains that the ALJ improperly discounted her credibility. (*Id.* at 26-28).

## II. Analysis

### A. Application of the Grids

The ALJ's assessment at step five must begin with an analysis of the applicability of the Grids, found in Appendix 2 of 20 C.F.R. Subpart P. *See Lugo v. Chater*, 1996 WL 116233, *2-3 (S.D.N.Y. 1996). The Grids are "a set of formulae used to determine whether a given claimant is disabled or healthy enough to perform work[,] . . . [and they] take into account such factors as age, education level, previous work experience, and physical limitations." *Id.* (citing *Decker v. Harris*, 647 F.2d 291, 296 (2d Cir. 1981)). The ALJ must first select the proper Grid table based upon the claimant's exertional limitations (sedentary, light, medium or heavy). *Frontanez-Rubiani v. Barnhart*, 2004 WL 2399821, *3 (E.D. Pa. 2004). "After selecting the proper table grid that fits the particular claimant's exertional limitations, the ALJ then compares the claimant's age, education and previous work experience, also referred to as the 'vocational' considerations, with the rules." *Id.* "[W]hen a claimant's vocational and exertional characteristics fit neatly into a rule, the inquiry is ended." *Id.* If directed by a particular rule, "[t]he claimant is deemed disabled[,] [and] [a]ny additional impact the claimant's nonexertional limitations may have on her ability to work is irrelevant." *Id.*

In this case, the ALJ relied upon Rules 201.19 and 201.25 to determine that the Grids did not direct a finding of disabled for Torres based upon her age, education, previous work experience, and exertional limitations. (Tr. 48). Those rules provide that an individual between the ages of either 18-44 (Rule 201.25) or 45-49 (Rule 201.19) whose education level is "limited" or less, who has previous non-transferable skilled or semi-skilled work experience, and who is limited to sedentary work, is not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, R. 201.19, 201.25).

Torres maintains that the ALJ should have applied Rule 201.17, which directs a finding of disability for individuals between the ages of 45-49 who are limited to sedentary work, have unskilled or no previous work history, and who are either illiterate or unable to communicate in English. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1), R. 201.17. According to Torres, her age, education and previous work experience require application of Rule 201.17. (Docket # 9-1 at 17-20). With respect to her age, Torres maintains that she turned 45 on July 16, 2011, approximately three months after her application date and approximately sixteen days after her DIB insured status expired. (*Id.* at 18- 20 & n.30). With respect to work experience, Torres contends that she is properly classified as unskilled because, although the ALJ concluded that some of her previous work experience was semi-skilled, the ALJ nevertheless applied Grid Rules that assumed non-transferable skills. (*Id.* at 17 n.28). Finally, with respect to her education level, Torres maintains that the record supports a conclusion that she is both illiterate and unable to communicate in English. (*Id.* at 19-20).

The government contends that the ALJ properly concluded that Torres is both literate in English and able to communicate in English and thus relied on Rules 201.19 and 201.25. (Docket # 12-1 at 27-31). Further, the government contends that the ALJ was not permitted to rely on Rule 201.17 because the vocational expert classified one of Torres's previous positions as semi-skilled based upon her operation of a forklift. (*Id.* at 30 n.11). The government contends that the ALJ properly recognized that her age-category changed in July 2011. (*Id.* at 29-30).

### 1. Education

An ALJ must categorize a claimant's education using terms defined in the regulations. *See* 20 C.F.R. §§ 404.1564(b)(1)-(4), 416.964(b)(1)-(4). Of relevance to this case

are the categories of "illiteracy" and "marginal education."  According to the regulations, illiteracy "means the inability to read or write."  20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The regulations provide that an individual is illiterate if she "cannot read or write a simple message . . . even though the person can sign his or her name."  *Id.*  The term "illiteracy" as used in the regulations "means illiteracy in English, not illiteracy in all languages"; whether an individual is literate in another language is irrelevant to her ability to find work in this country. *See Zayas v. Heckler*, 577 F. Supp. 121, 127 (S.D.N.Y. 1983) ( rejecting contention that literacy was demonstrated by evidence that claimant completed high school in Puerto Rico and could read and write Spanish).  "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs."  20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2).  As a general matter, "formal schooling at a 6th grade level or less is a marginal education," *id.*, although "the numerical grade level that [a claimant] completed in school may not represent [her] actual educational abilities."  20 C.F.R. §§ 404.1564(b), 416.964(b).  This is particularly true where, as here, the claimant's formal education was provided in a foreign language.[2]  *See Delacruz v. Astrue*, 2011 WL 6425109, *24 (S.D.N.Y.) (ALJ failed to properly assess education category where claimant testified that her formal schooling was completed in the Dominican Republic), *report and recommendation adopted*, 2011 WL 6425101 (S.D.N.Y. 2011); *see Lugo v. Chater*, 1996 WL 116233 at *3 (claimant was neither "literate nor even minimally conversant in English" where, among other things, "[claimant] testified [that] his formal education was acquired entirely in Spanish in Puerto Rico").

---

[2] Torres testified that she attended school through the seventh grade in Puerto Rico.  (Tr. 16).  She also testified that she attended a program called "Latin Progress" for several months to learn English, but did not complete the program.  (*Id.*).

In evaluating a claimant's education, the ALJ must also assess whether the claimant is able to communicate in English. 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5). According to the regulations, before categorizing an individual's educational category, the ALJ must evaluate the individual's ability to speak, read, and understand English "because English is the dominant language of the country, [and] it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language." *Id.*

I agree with Torres that the record does not support the ALJ's determination that she is able to communicate in English. In making his determination, the ALJ relied solely upon Torres's testimony that she is able to speak "a little English" and that instructions at her previous employment were given in English. (Tr. 43, 45). During the hearing, Torres testified that she could speak "[a] little bit" of English, but that she "just understand[s] a few things." (Tr. 16). She further testified that instructions were given to her in English in her previous job; she also testified that she required a coworker to assist her to fill out the application. (Tr. 16-17). Based upon this testimony, the ALJ concluded that Torres "acknowledged that she is able to understand and follow simple directions in spoken English as she did with her prior job." (Tr. 45). This was error.

As an initial matter, Torres's testimony that instructions were given to her in English does not support the conclusion that she could understand and follow simple directions in spoken English, particularly in the absence of any further inquiry as to whether she received assistance to comprehend the directions. In any event, the Second Circuit has found similar testimony insufficient to establish the facility to communicate in English. *See Vega v. Harris*, 636 F.2d 900, 904 (2d Cir. 1981) ("the fact that [claimant] apparently was able to communicate

sufficiently to perform her hotel job does not necessarily mean that she can communicate well enough to suit the standard"). Similarly, testimony that a claimant is able to speak or understand "some" English is generally insufficient to support a finding that the claimant is able to communicate in English. *See Delacruz v. Astrue*, 2011 WL 6425109 at *24-25 (ALJ's determination that claimant could communicate in English not supported by claimant's ability to respond to some questions without the assistance of an interpreter); *Cabrera v. Astrue*, 2007 WL 2706276, *6 (S.D.N.Y. 2007) (claimant's testimony that she sometimes read the newspaper or watched television in English, but could not always understand the words, insufficient to support conclusion that she could communicate in English), *modified on other grounds*, 2008 WL 144697 (S.D.N.Y. 2008); *Lugo*, 1996 WL 116233 at *4-5 (claimant's testimony that he spoke "a little" English insufficient).

In any event, the record contains substantial information to suggest that Torres is unable to communicate in English, which was largely ignored by the ALJ. During the application process, Torres stated that she was unable to speak and understand English, and her daughter apparently completed her paperwork for her. (Tr. 205, 222). Further, the individual who interviewed Torres in connection with her claims for benefits indicated that she was unable to communicate in English, and written communications concerning the claims were sent to Torres in both English and Spanish. (Tr. 5-6, 72-85, 97-99, 103-04, 107, 128-34, 166-68, 203). During the administrative hearing, Torres testified with the assistance of an interpreter. (Tr. 38). Further, Torres's medical records overwhelmingly suggest that she is unable to communicate with her medical providers in English.[3] (*See*, *e.g.*, 295, 299, 301, 303, 350, 357, 385, 391, 405, 547, 551). Although the ALJ noted some of this evidence in his acknowledgment that Torres's

---

[3] Torres contends that two of her treating sources, Teresa Chang, MD and David Comisar, LCSW-R, were Spanish speakers. (Docket # 9-1 at 4 & n.5-6).

"primary" language was Spanish, he seemingly ignored it in reaching his determination that she was able to communicate in English.

The government points to other evidence in the record that it contends demonstrates Torres's ability to communicate in English, namely, the fact that she had a driver's license and stated that she could manage money, was able to understand written and spoken instructions, and sometimes accompanied her grandchildren to the movies. (Docket # 12-1 at 28). Such evidence, without further development, fails to demonstrate that Torres was able to communicate in English. For instance, the record does not reflect whether Torres was permitted to apply for her driver's license in Spanish, nor does it indicate whether she was able to understand the movies that she attended with her grandchildren. Finally, Torres was never asked whether she could understand written and spoken instructions in English, as opposed to Spanish.

In my estimation, the record strongly suggests that Torres is unable to communicate in English, although it also contains some conflicting, albeit undeveloped, evidence, including her testimony that she could understand some English and that instructions at her previous job were provided in English. In addition, records from one emergency room visit describe Torres as "fluent" in English; another record indicates that Torres provided her medical history without an interpreter. (Tr. 472, 558). These isolated references stand in stark contrast to the weight of the evidence and, without further exploration by the ALJ, are insufficient to support his conclusion.

Moreover, the ALJ's conclusion that Torres was literate in English is unsupported by the record; indeed, the record demonstrates to the contrary. Torres stated in both her application for benefits and her hearing testimony that she was unable to read English. (Tr. 16, 205). She also stated that she was unable to write anything more than her name in English.

(Tr. 205).  Nothing in the record contradicts these representations.  Indeed, as discussed above, the record demonstrates that she was unable to complete job applications or her application for benefits without assistance.

Despite the absence of contradictory evidence, the ALJ reasoned that because Torres had acknowledged her ability to understand and follow simple verbal instructions in English, she was "not illiterate in English, although . . . she is limited."  (Tr. 45).  This conclusion was error.  First, as discussed above, Torres did not acknowledge that she was able to understand spoken English instructions.  Second, her ability to understand spoken English in any event says nothing about her ability to read or write English.  *Raja v. Astrue*, 2012 WL 1887131, *10 n.5 (S.D.N.Y. 2012) ("[t]o the extent that [the ALJ's] finding that [claimant] could communicate in English was intended to indicate literacy, that is error").

The government argues that the ALJ's conclusion that Torres was literate is supported by the record and should be affirmed.  (Docket # 12-1 at 28-29).  The government relies upon the same undeveloped record information described above as proof of Torres's supposed English literacy.  That information, which is insufficient to demonstrate that Torres is able to *communicate* in English, is surely insufficient to establish that she is *literate* in English.  Indeed, considering the complete absence of evidence to contradict Torres's representations that she was illiterate in English, the government's position that the ALJ's decision may be affirmed is confounding, if not frivolous.

Although the ALJ found Torres only partially credible, "an absence of complete credibility is 'not enough of a basis, by itself, for the ALJ to have rejected plaintiff's testimony that [s]he cannot read.'"  *See Clancy v. Astrue*, 2009 WL 1457690, *5 (N.D.N.Y. 2009) (quoting *Gross v. McMahon*, 473 F. Supp. 2d 384, 389 (W.D.N.Y. 2007)); *Campbell v. Astrue*, 713

F. Supp. 2d 129, 136 (N.D.N.Y. 2010) (same). Having carefully reviewed the record, which strongly suggests an inability to communicate in English, and given Torres's uncontested statements that she is unable to read or write in English, I conclude that Torres is illiterate in English. *See Dixon v. Heckler*, 811 F.2d 506, 511 (10th Cir. 1987) (concluding that claimant was illiterate and therefore disabled where "[t]here [was] evidence of [claimant's] illiteracy in the record . . . , despite the sparseness of that record"); *Raja v. Astrue*, 2012 WL 1887131 at *10 & n.5 (finding claimant illiterate based upon claimant's testimony that he was illiterate and evidence that the claimant's son had to translate information sent by the Social Security Administration); *Lagerman v. Comm'r of Soc. Sec.*, 2002 WL 1608257, *2-3 (E.D. Mich. 2002) ("after reviewing the record as a whole, it is inconceivable that any fair minded person could reach the conclusion that plaintiff was anything but illiterate[;] . . . [t]here is no 'inconsistent' evidence to be resolved with respect to the plaintiff's illiteracy").

Whether Torres is illiterate in English is critical to the determination of her claim because her English illiteracy justifies application of Rule 201.17 regardless of whether she is able to communicate in English. *See Cruz v. Colvin*, 2015 WL 3413320, *4 (N.D. Cal. 2015) ("in order to apply Rule [201.17], the ALJ did not have to prove *either* that [claimant] was literate *or* able to communicate in English; the ALJ had to prove *both*"); *Raja*, 2012 WL 1887131 at *10 & n.5 ("an individual aged 45-49 who is limited to sedentary work and is *either* unable to communicate in English *or* illiterate is disabled") (citing SSR 96-9P, 1996 WL 374185, *2 n.3 (1996)). In this case, if Torres were to meet Rule 201.17's other categorical requirements of age and work experience, she would be determined to be disabled under the Rule, and a remand for calculation of benefits would be warranted. *See Dixon v. Heckler*, 811 F.2d at 511("at this point in the disability determination, . . . the burden is on the [Commissioner] to

show [claimant's] literacy[;] [thus]. . . further administrative proceedings would only further delay the appropriate determination and award of benefits"); *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 818 (E.D.N.C. 2009) ("[g]iven that [c]laimant's RFC, age, work experience and education match a grid category, automatic application of the Grids is appropriate"). For the reasons discussed below, however, further proceedings are warranted to permit the ALJ to assess whether she meets those requirements, specifically, to determine whether Torres's prior work experience should be considered unskilled and whether she should receive the benefit of a non-mechanical application of the age category requirements.

### 2.   **Transferability of Skills**

A claimant with no prior work experience or unskilled prior work experience qualifies for application of Rule 201.17. 20 C.F.R. Pt. 404, Subpt. P, App. 2, R. 201.17. A claimant with prior skilled or semi-skilled work may still qualify for application of Rule 201.17 if the claimant is illiterate and their prior work skills are not transferable. *See Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("in applying the grid rules the Commissioner must treat a skilled or semi-skilled work history with no transferable skills as equivalent to an unskilled work history"); *Glenn v. Colvin*, 2015 WL 4878792, *5 (D.S.C. 2015) ("[f]or purposes of establishing disability under Grid Rule [201.17], the transferability of [p]laintiff's job skills becomes relevant, however, if [p]laintiff can establish that he is illiterate"); *Neilsen v. Colvin*, 2013 WL 1146927, *2 (C.D. Ca. 2013) ("Grid Rule [201.17] only applies where the plaintiff's past work experience also coincides completely with Rule [201.17], *i.e.*, unskilled work, or skilled or semi-skilled work with no transferable skills"); *Barillaro v. Comm'r of Soc. Sec.*, 216 F. Supp. 2d 121, 130 (E.D.N.Y. 2002) ("although plaintiff's prior employment was skilled work,

[the ALJ] found his skills to be untransferable[;] [t]herefore, [the ALJ] should have applied Rule 201.17, leading to a finding of disability").

In this case, the ALJ determined that Torres had previous semi-skilled work experience based upon the vocational expert's classification of Torres's prior work. The vocational expert's testimony on this point rested upon an interpretation of vague and unclear testimony by Torres about her job functions. (Tr. 25 ("The record also indicates, at least the way I understood it, that she was operating a forklift. . . . [I]f that's correct [the position would require a SVP 3]")). Torres never explicitly testified that she operated a forklift; rather, she testified that she pushed containers that had wheels on them and "had to hit [the drummers] with my body." (Tr. 14).

In any event, even if Torres's previous work experience could properly be considered semi-skilled, she would still qualify for application of Rule 201.17 if her skills were determined to be non-transferable. Torres contends that this issue was resolved in her favor. (Docket # 9-1 at 18 n.28). To the contrary, the ALJ expressly declined to reach this determination because he concluded that his finding that Torres had a marginal education rendered the issue moot. (Tr. 48 ("[t]transferability of jobs skills is not material to the determination of disability because using the [Grids] as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills")). Under these circumstances, a remand is appropriate to permit the ALJ to determine whether Torres's previous employment was semi-skilled and, if so, whether those skills are transferable. *See Silveira v. Apfel*, 204 F.3d at 1262 ("[plaintiff's] disability status turns on whether he has transferable skills, a finding that the ALJ expressly declined to make[;] [w]e remand [plaintiff's] case to the ALJ for a finding as to whether [plaintiff] has transferable skills"); *Glenn v. Colvin*, 2015 WL 4878792 at

*7 (remanding for further proceedings to permit the ALJ to determine whether plaintiff's job skills were transferable "with the understanding that skilled or semi-skilled work history with no transferable skills is equivalent to an unskilled work history under the Grid Rules pursuant to 20 C.F.R. § 404.1565(a) and Social Security Rule 82-41"); *Merritt v. Colvin*, 2015 WL 4039355, *8 (W.D. Wash. 2015) (remanding where "the ALJ made no finding as to the transferability of job skills – other than that the issue of transferability was not material in light of the fact that the two Grid rules he considered both directed a finding of 'not disabled'"); *Neilsen v. Colvin*, 2013 WL 1146927 at *2 (remanding for further proceedings where ALJ had made no findings regarding transferability of skills on the mistaken belief that Grids supported a finding of not disabled irrespective of the transferability of claimant's skills).

### 3. **Borderline Age**

The Grids provide for three distinct age categories:  (1) "younger person" is an individual between the ages 18 and 49; (2) "person closely approaching advanced age" is an individual between the ages 50 and 54; and, (3) "person of advanced age" is an individual 55 and over.  20 C.F.R. §§ 404.1563(c)–(e), 416.963(c)-(e).  The Grids recognize that for individuals who are between age 45-49, "age is a less advantageous factor for making an adjustment to other work than for those who are age 18-44."  20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 201.00(h)(1).  Thus, as discussed at length above, Rule 201.17 generally directs a finding of disability when a person is between 45 and 49 and illiterate or unable to communicate in English, can only perform sedentary work, and has no past work experience, unskilled past work experience, or has non-transferable skills.  *Id.*

The regulations direct that the age category that applies to a claimant during the period for which they claim disability should be used to determine whether or not the claimant is

disabled.  20 C.F.R. §§ 404.1563(b), 416.963(b).  The regulations make clear, however, that the age categories are not to be applied "mechanically in a borderline situation." *Id.*  Thus, if a claimant is within a few days or months of obtaining an older age category, "and using the older age category would result in a determination or decision that [the claimant] [is] disabled, [the ALJ] [should] consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." *Id.*

The Commissioner has promulgated a Hearings, Appeals and Litigation Law Manual ("HALLEX") as a resource to be used by its employees.  That manual sets forth a two-part test to identify borderline age situations:

1. Determine whether the claimant's age is within a few days or a few months of a higher age category.

2. If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."

*See* HALLEX at II-5-3-2.  If the answer to either question is no, a borderline situation does not exist.  *Id.*  If the answer to both questions is yes, then a borderline age situation exists and "the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age." *Id.*  When making this determination, the adjudicator is instructed to consider the presence of "additional adversities" and, exercising discretion, take a "sliding scale approach," which requires a greater showing of adversity "as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." *Id.*  Adjudicators are instructed to consider applying this guidance "whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period), or the date of the ALJ's decision." *Id.*

Although the "regulations do not clearly define the outer limits of a borderline situation," several courts have held that a period of up to six months is within the rule, *see Souliere v. Colvin*, 2015 WL 93827, *5 (D. Vt. 2015) (collecting cases); *Metaxotos v. Barnhart*, 2005 WL 2899851, *8 (S.D.N.Y. 2005) ("[s]ome courts which have addressed this regulation have held that six months is within the rule") (collecting cases); *but see Smolinski v. Astrue*, 2008 WL 4287819, *4 (W.D.N.Y. 2008) ("[a]mong the district courts in the Second Circuit, three months appears to delineate the outer limits of a few months") (internal quotation omitted), and several courts have held that a period of more than six months is not, *see Gravel v. Barnhart*, 360 F. Supp. 2d 442, 446 n.8 (N.D.N.Y. 2005) (collecting cases); *Hunt v. Comm'r of Soc. Sec.*, 2004 WL 1557333, *5 n.14 (N.D.N.Y. 2004) (eight months not borderline).

No apparent dispute exists either that Torres's age qualified her for application of Rule 201.17 as of her birthday on July 16, 2011, based upon her age category change or that her date last insured for DIB purposes was June 30, 2011, approximately sixteen days prior to her birthdate. (Tr. 202). Thus, under the regulations, a borderline age situation exists if Rule 201.17 applies to Torres's claims. *See Hofler v. Astrue*, 2013 WL 442118, *9 (E.D. Va.) (borderline situation existed where claimant "was only eight days away from the [higher age category] on his date last insured, when placing [claimant] in that age category would have resulted in a findings of disabled under the Grids"), *report and recommendation adopted*, 2013 WL 442880 (E.D. Va. 2013); *Graham v. Massanari*, 2001 WL 527326, *8 (N.D. Ill. 2001) (borderline situation existed where claimant was "only a few months shy of his 50th birthday" on the date his insured status expired); *Davis v. Shalala*, 883 F. Supp. 828, 838 (E.D.N.Y. 1995) ("[i]n this case, [plaintiff's] situation was borderline[;] [h]e was three months shy from his fiftieth birthday on the date he was last insured").

Torres maintains that the ALJ did not properly consider her borderline situation. (Docket # 9-1 at 18). As discussed above, the ALJ applied Grid Rules 201.19 and 201.25, not 201.17, in reaching his determination. Thus, under the ALJ's reasoning, a borderline situation did not exist because a finding of not disabled was directed by the Grids irrespective of Torres's age category. On remand, if the ALJ determines that Torres qualifies for application of Rule 201.17 based upon her previous work experience, then a borderline situation would exist and the ALJ should consider whether it is more appropriate to use the higher age category or Torres's chronological age on her date last insured.[4] Although Torres appears to suggest that this Court should make this determination, I conclude that remand for further proceedings on this issue is appropriate in view of my conclusion that remand is otherwise required and because the ALJ has not yet evaluated the borderline age issue. *See Ellsworth v. Colvin*, 2014 WL 3907139, *11 (W.D. Wis. 2014) (remanding for further proceedings where it was unclear whether the ALJ had considered the borderline situation and where remand on other grounds was already warranted); *Hofler v. Astrue*, 2013 WL 442118 at *9 (remanding to permit the ALJ to address claimant's borderline age change eight days before his date last insured); *Pickett v. Astrue*, 895 F. Supp. 2d 720, 731 (E.D. Va. 2012) (remanding for further proceedings where ALJ's decision failed to demonstrate that plaintiff's borderline age was considered); *Turner v. Astrue*, 2011 WL 2783832 at *10 (remanding for further proceedings to permit the ALJ to "explain whether [p]laintiff's case is a 'borderline situation,' and, if so, which age category should be used in assessing

---

[4] Although Torres appears to suggest that the appropriate date for consideration is her application date (Docket # 9-1), caselaw suggests that the relevant date is her date last insured. *See Turner v. Astrue*, 2011 WL 2783832, *10 (S.D. Ohio 2011) ("[i]n sum, the important date in this case is . . . the date [p]laintiff was last insured"); *Lewis v. Comm'r of Soc. Sec.*, 666 F. Supp. 2d 730, 736 (E.D. Mich. 2009) ("the parties agree that for [DIB] purpose in this case, it is measured from the claimant's date last insured"); *Gallagher v. Astrue*, 2009 WL 929923, *7 n.4 (D.N.H. 2009) ("[f]or SSI purposes, entitlement to borderline age consideration is measured as of the date of the ALJ's decision [;] . . . [w]hile for [DIB] purposes, [borderline age consideration] is measured from the claimant's date last insured"); *Swan v. Barnhart*, 2004 WL 1529270, *9 n.12 (D. Me. 2004) (same). In any event, the ALJ should determine the relevant date on remand.

[p]laintiff's claim for disability insurance benefits"); *Gallagher v. Astrue*, 2009 WL 929923 at *7 ("[b]ecause the ALJ did not provide any indication that he considered [claimant's] borderline age categorization, I remand this case for proper consideration"); *Metaxotos v. Barnhart*, 2005 WL 2899851 at *9 ("[because] remand is required, and rather than have this [c]ourt announce a rule to define the edge of the borderline, further proceedings upon remand should include consideration of the borderline application").

### B.    The ALJ's Remaining Step 5 Assessment

The ALJ properly sought testimony from a vocational expert to determine whether there were any jobs in the national economy for an individual with Torres's exertional and non-exertional limitations and vocational considerations because the ALJ incorrectly concluded that Torres was literate in English.  Because the vocational expert's testimony was based upon that incorrect literacy conclusion, however, it does not constitute substantial evidence supporting the ALJ's step five findings.  *See Castillo v. Colvin*, 2015 WL 153412, *28 (S.D.N.Y. 2015) (vocational expert testimony could not support ALJ's step five assessment where ALJ had failed to properly evaluate claimant's education level); *Smith v. Colvin*, 2015 WL 65544, *4 (E.D. Cal. 2015) ("[b]ecause the ALJ failed to question the vocational expert regarding whether an individual who is illiterate would also be able to perform the jobs identified, the testimony of the vocational expert has no evidentiary value for the ALJ's conclusion that [p]laintiff is able to perform [other work]").

Vocational expert testimony will be needed if the ALJ determines that Torres does not qualify for application of Rule 201.17 or if the ALJ determines that Torres qualifies for application of Rule 201.17 but for only a portion of the time period for which she seeks benefits. The Grids direct a finding of not disabled for Torres prior to the date her age category changed

from the 18-44 age category to the 45-49 age category. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00 (h)(2), R. 201.23 – 201.29. Thus, even if Torres qualifies for application of Rule 201.17, the ALJ must still make a step five assessment for Torres for any period of time for which she seeks benefits prior to the date the ALJ determines her age category changed. If the ALJ determines that Torres does not qualify for application of Rule 201.17, the ALJ will be required to identify jobs in the national economy that Torres can perform given her illiteracy and her RFC.

The ALJ should ensure that any testimony from a vocational expert coincides with the DOT, particularly the general education development ("GED") language levels required for any positions identified by the vocational expert. *See Castillo v. Colvin*, 2015 WL 153412 at *28 ("[c]onsidering that plaintiff has only a marginal education, and is considered illiterate, and was found by the ALJ to have the capacity to carry out only simple instructions, it appears that plaintiff would be unable to perform any occupation requiring more than a level 1 GED in either reasoning or language development").

## C. Torres's Remaining Contentions

I conclude that Torres's remaining arguments are meritless because substantial evidence supports the ALJ's RFC and credibility assessments. With respect to the ALJ's conclusion that Torres was capable of frequent handling, fingering, and feeling, he was not required to adopt every finding in Chang's assessment to which he otherwise accorded great weight. *See Younes v. Colvin*, 2015 WL 1524417, *8 (N.D.N.Y. 2015) ("[t]here is no absolute bar to crediting only portions of medical source opinions"). The ALJ adequately explained that he concluded that Torres was capable of frequent handling and fingering based upon her treatment history and the results of imaging and testing of the left wrist. (Tr. 43-44).

Torres contends that the ALJ failed to adequately assess her mental impairments because he failed to account for her GAF score and failed to adequately weigh the opinion of Caldwell. (Docket # 9-1 at 25-26). As an initial matter, "cases within this Circuit have held that an ALJ's failure to discuss GAF scores does not mandate remand." *Hamilton v. Astrue*, 2013 WL 5474210, *13 (W.D.N.Y. 2013) (collecting cases). In any event, I conclude that the ALJ's mental RFC assessment adequately discussed the relevant evidence of record and accounted for the limitations supported by the record, that he provided an adequate rationale for discounting Caldwell's opinion, and that his assessment was supported by substantial evidence.

Finally, Torres maintains that the ALJ improperly discounted her credibility based upon her failure to comply with prescribed treatment, her positive Waddell findings and her ability to care for her grandchildren. (Docket # 9-1 at 26-28). I disagree and find that the ALJ assessed Torres's subjective complaints in the context of a comprehensive review of the entire record. I conclude that the ALJ's limited reliance on the Waddell signs was appropriate in this case as "a review of the ALJ's written decision reveals that the signs were mentioned as one factor in a larger discussion of why [Torres's] testimony was not entirely credible." *Caron v. Colvin*, 2014 WL 3107959, *6 (N.D.N.Y. 2014) (recognizing that "at best, Waddell signs may be used as one minor factor in a credibility determination"), *aff'd*, 600 F. App'x 43 (2d Cir. 2015). Further, the ALJ properly considered Torres's noncompliance with recommended treatment, including prescribed medication and physical therapy, as one factor weighing against her credibility. *See Weed Covey v. Colvin*, 2015 WL 1541864, *17 (W.D.N.Y. 2015) ("the ALJ was permitted to consider [p]laintiff's noncompliance with treatment as a factor weighing against [p]laintiff's credibility[;] . . . [t]he fact that the ALJ did not explicitly reference [p]laintiff's alleged mental impairments as a cause for noncompliance does not mean that it was not

considered"); *Lee v. Colvin*, 2015 WL 3505791, *6 (W.D.N.Y. 2015) ("[t]he ALJ was permitted to consider plaintiff's noncompliance with treatment as a factor weighting against his credibility"); *Mashaw v. Colvin*, 2014 WL 3956643, *11 (N.D.N.Y. 2014) ("the ALJ did not reference plaintiff's failure to re-establish contact with his physicians to negate other compelling evidence or as the sole reason for discrediting his testimony, but properly mentioned it as one of the factors used in analyzing plaintiff's credibility"); *Thomas v. Colvin*, 2014 WL 1219213, *5 (W.D.N.Y. 2014) ("[i]n addition to detailing [claimant's] noncompliance, the ALJ addressed other inconsistencies between [claimant's] hearing testimony and record evidence regarding her daily activity, the intensity, persistence, and frequency of her symptoms, and treatment measures[;] [i]n sum, the ALJ properly based his credibility assessment on the entire case record, and the assessment is supported by substantial evidence"). Finally, the ALJ properly considered Torres's continued provision of child care services to her grandchildren in evaluating her ability to tolerate the demands of work. Contrary to Torres's contentions, the record reflects that Torres continued to care for her grandchildren after September 2011. (Tr. 381, 383, 386).

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (**Docket # 12**) is **DENIED**, and Torres's motion for judgment on the pleadings (**Docket # 9**) is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision. On remand, the ALJ must consider whether, given Torres's age, illiteracy in English, and her previous work history, she qualifies for application of Grid Rule 201.17, and whether, given the date of her forty-fifth birthday, she

should benefit from application of the borderline age regulation. If the ALJ determines that Torres does not qualify for application of Rule 201.17 or if he determines that Rule 201.17 applies only to a portion of the time period for which Torres seeks benefits, then the ALJ should also obtain vocational expert testimony to determine whether, considering Torres's illiteracy in English and her exertional and non-exertional impairments, other work exists in the national economy that Torres can perform.

**IT IS SO ORDERED.**

<i>s/Marian W. Payson</i>
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
      September 15, 2015